# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| OCEAN SPRAY CRANBERRIES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> DECAS CRANBERRY PRODUCTS, INC., ) <br> ) <br> Defendant. ) <br>_____) <br> ) <br> DECAS CRANBERRY PRODUCTS, INC., ) <br> ) <br> Plaintiff-in-counterclaim, ) <br> ) <br> v. ) <br> ) <br> OCEAN SPRAY CRANBERRIES, INC. and ) <br> RANDY C. PAPADELLIS, ) <br> ) <br> Defendants-in-counterclaim ) | Case No. 08-CV-11738 RWZ <br><br> **DEMAND FOR JURY TRIAL** |

## ANSWER AND AMENDED COUNTERCLAIMS OF
## DECAS CRANBERRY PRODUCTS, INC.

Defendant, Decas Cranberry Products, Inc. ("Decas"), responds to the complaint as follows:

## ANSWER

### The Parties

1. Decas lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them.

2. Admitted.

**Jurisdiction and Venue**

3. This paragraph contains an allegation to which no answer is required, but Decas denies allegations of any patent infringement on its part.

4. Admitted.

5. Admitted.

6. Admitted.

**Count I – Patent Infringement**

7. Decas lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies them.

8. As set forth in more detail in Decas's counterclaims below, Decas admits that in June, 2008, Ocean Spray, in connection with an unsuccessful bid to buy the Decas companies, improperly asserted a baseless patent infringement claim against Decas and thereafter demanded access to Decas's facilities for purposes of observing Decas's proprietary manufacturing process. Decas further admits that it denied Ocean Spray's request. Decas denies the remaining allegations of this paragraph.

9. Denied.

10. Denied.

11. Denied.

**AFFIRMATIVE DEFENSES**

First Affirmative Defense (Patent Misuse)

Ocean Spray has misused the '861 Patent in commencing and maintaining this action in bad faith and without probable cause and in demanding royalties and other damages with respect

to products it knew or should have known are not covered by the '861 Patent. Ocean Spray's conduct has served to impermissibly broaden the scope of its patent with anticompetitive effect.

<u>Second Affirmative Defense (Unclean Hands)</u>

Ocean Spray's claims for equitable relief are barred by the doctrine of unclean hands. As set forth in more detail in Decas's counterclaims below, Ocean Spray initially asserted its patent infringement claim in connection with an unsuccessful bid to buy the Decas companies, for the improper purpose of interfering in the sale process. Ocean Spray thereafter threatened, commenced, and continues to maintain this lawsuit, in a bad faith attempt to interfere with Decas's business relationships and to improperly and unjustifiably preempt any perceived threat to its dominance in the North American cranberry market and in the market for sweetened dried cranberries.

<u>Third Affirmative Defense (Equitable Estoppel)</u>

Ocean Spray's claim for infringement of the '861 patent is barred by the doctrine of equitable estoppel.

<u>Fourth Affirmative Defense (Laches)</u>

Ocean Spray's claim for infringement of the '861 patent is barred by the doctrine of laches.

**AMENDED COUNTERCLAIMS**

Decas asserts the following counterclaims:

**PARTIES**

1.  Decas is a corporation having a principal place of business at 4 Old Forge Drive, Carver, Massachusetts.

2.  Decas is informed and believes, and therefore alleges, that Ocean Spray is a corporation having a principal place of business at One Ocean Spray Drive, Lakeville-

3

Middleboro, MA.

3.  Randy C. Papadellis is the President and Chief Executive Officer of Ocean Spray.

## JURISDICTION AND VENUE

4.  Decas seeks declarations of non-infringement and invalidity of the patent in suit, United States Patent No. 5,320,861 ("the '861 Patent'"). As such, subject matter jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (patent) and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

5.  Decas also seeks damages based upon Ocean Spray's attempt to monopolize in violation of 15 U.S.C. § 2. Jurisdiction over these federal questions is proper pursuant to 28 U.S.C. §§ 1331 and 1337(a), as well as 15 U.S.C. § 15.

6.  Decas further seek damages under Massachusetts law. Jurisdiction over Decas's state law counterclaims is proper under this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

7.  Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## FACTUAL BACKGROUND

8.  Ocean Spray is in the business, among other things, of buying, processing, and selling raw cranberries, and of manufacturing and selling cranberry food products. According to its web site, Ocean Spray posted 2007 fiscal gross sales of approximately $1.7 billion.

9.  Since 1993, Ocean Spray has been manufacturing and selling a sweetened dried cranberry ("SDC") product marketed by Ocean Spray under the trade name "Craisins"®. Sweetened dried cranberries are manufactured by extracting a certain amount of juice from raw cranberries, then infusing the fruit with a sugar solution, followed by a drying process.

4

10.     The cranberry market is comprised of cranberries grown in bogs in the United States and Canada.  Through contracts with cranberry growers in its cooperative, Ocean Spray controls approximately 65% of the fresh cranberries harvested in each season.

11.     The SDC market is comprised of all sweetened dried cranberries produced in the United States and Canada.   Ocean Spray has an approximate 60% share of the SDC market. Ocean Spray purports to manufacture its SDC product pursuant to U.S. Patent No. 5,320,861 ("the '861 Patent"), attached as Exhibit A to the Complaint.  Claim 29 of the '861 Patent requires *inter alia* the following:

> formulating an infusion liquid having inherent soluble fruit component
> *at a level equal to or greater than* said decharacterized fruit,
>
> and
>
> infusing said decharacterized fruit with said infusion liquid *without net extraction*
> of said inherent soluble fruit component from said decharacterized fruit.

'861 Patent, claim 29, lines 6-14 (emphasis added).

12.     Decas is an independently-owned cranberry company with manufacturing facilities located in Carver, Massachusetts.  In its 2007 fiscal year, Decas had gross sales of less than $100 million.

13.     In 1999, Decas filed a patent application for an SDC product that it had been developing and marketing since 1997. Decas's patent application was approved in 2002, and Decas now holds U.S. Patent No. 6,440,483 ("the '483 Patent"), which discloses the process which Decas uses to make its SDC product.  A true and correct copy of the '483 Patent is attached hereto as Exhibit 1.

14.     As described in Decas's patent, Decas's process for manufacturing its SDC product varies from the process described in Ocean Spray's patent in a number of respects.  In

particular, Claim 1 of the '483 Patent requires inter alia the following:

> infusing the extracted fruit with an infusion liquid having an amount of sugar and an amount of soluble fruit components under gentle conditions, the gentle conditions including formulating the amount of soluble fruit components in the infusion liquid *in order to diffuse a predetermined amount of the soluble fruit components remaining in the extracted fruit into the infusion liquid* ....

'483 Patent, claim 1, lines 28-34 (emphasis added). Decas's process is designed to produce a sweetened dried cranberry product that is well-defined and does not need to have juice "added back" to the fruit during the infusion process. '483 Patent, column 1, lines 54-56. Consistent with the claims in its patent, Decas does not perform either of the steps identified in Paragraph 11 above as part of Ocean Spray's manufacturing process.

15. Decas's SDC product has been a tremendous success, and it currently is the company's most profitable processed food item. Decas markets and sells its SDC product in direct competition with Ocean Spray's SDC product.

16. In July, 1999, Ocean Spray filed suit in this Court against one of Decas's major customers for its SDC product (then having patent-pending status), C.A. No. 99-CV-11559-RCL. In that lawsuit, Ocean Spray alleged that it had tested Decas's SDC product and determined that the product ingredients did not comport with the labeling that appeared on the product. Notably, Ocean Spray made no claim that Decas's SDC product infringed any claims in Ocean Spray's patent. Ocean Spray ultimately was forced to concede that Decas's product labeling was accurate. In January 2000, the lawsuit was dismissed.

17. In early 2006, Ocean Spray tested Decas's SDC product and the SDC products being manufactured and sold by a number of Ocean Spray's other competitors. As a result of this product testing, Ocean Spray notified a number of its competitors that their products were infringing on Ocean Spray's patent. Notably, Ocean Spray did not send any such notification to

6

Decas.  Furthermore, in August 2006, Rob Beams, an Ocean Spray Vice-President, told Decas's then Chief Executive Officer, John Deas, that Ocean Spray did not intend to assert a similar patent infringement claim against Decas.

18.     In December 2006, Ocean Spray expressed to Decas an interest in acquiring Decas Cranberry Sales, Inc., Decas Cranberry Products, Inc., Decas Botanical Synergies, LLC and the 38.2-acre industrial site at 4 Old Forge Drive, Carver, MA ("the Decas companies"). Ocean Spray and Decas met to discuss Ocean Spray's offer, but no agreement was reached. During these discussions, Ocean Spray did not raise with Decas any "suspicions" of patent infringement.

19.     Decas thereafter advised Ocean Spray that it had decided to retain the services of an investment banker, Canaccord Adams, to explore all of the market opportunities available to Decas in terms of possible buyers or strategic partnerships and alliances.

20.     In or about February 2008, Canaccord Adams sent out a preliminary "teaser" to a large number of entities designated as possible buyers or strategic partners.

21.     Thereafter, Canaccord Adams sent out a confidential memorandum about the Decas companies to approximately 80 entities interested in pursuing negotiations with Decas, including Ocean Spray.

22.     On or about March 27, 2008, Ocean Spray submitted a non-binding letter of interest to Decas, indicating an interest in buying the Decas companies.  Ocean Spray made no mention at that time of any potential patent infringement claims.

23.     Decas received approximately ten other non-binding letters of interest from potential buyers or strategic partners, and decided to move forward with six of those entities, including Ocean Spray.

24. In late April and early May, 2008, Decas made confidential presentations to the remaining six bidders, including Ocean Spray. The presentation to Ocean Spray was made at Decas's offices on May 1, 2008. Decas did not disclose as part of these presentations any new information about its product or its manufacturing processes that was different from or in addition to information that already had been made available to Ocean Spray and the other interested bidders. Ocean Spray made no reference during this presentation of any potential patent infringement claim.

25. On June 17, 2008, Ocean Spray, by means of a letter from its President and Chief Executive Officer, Mr. Papadellis, submitted a more detailed proposal to Decas regarding acquisition of the Decas companies. In that proposal, Mr. Papadellis raised for the very first time a claim that Decas's SDC manufacturing process, a process known to Ocean Spray since at least 1999, "might" be infringing on Ocean Spray's patent.

26. While Ocean Spray's bid purported to be a good faith offer to buy the Decas companies, the bid actually represented an improper attempt by Ocean Spray and Mr. Papadellis to impede the sale of the Decas companies, for the purpose either of reducing Decas's value so as to allow Ocean Spray to acquire the Decas companies at a discounted price, or of maintaining Ocean Spray's dominance in the marketplace by preventing Decas from combining its operations with another Ocean Spray competitor.

27. Mr. Papadellis's June 17, 2008 letter stated as follows:

> We believe that Decas, like others in the industry, may be infringing the '861 patent in its manufacturing process. Such an infringement carries significant potential liabilities. Indeed, if an analogy is made to a recent license agreement entered into as settlement of litigation enforcing the patent, potential damages likely range between $15 to $20 million, in addition to the time, resources, expense and uncertainty of complex patent litigation. Our proposal includes a full waiver of any such claims upon the closing of these transactions with Ocean Spray.

8

Mr. Papadellis did not request that Decas cease and desist from manufacturing and selling its SDC product or seek any other relief from Decas, nor did Mr. Papadellis ask Decas to provide Ocean Spray with any information about Decas's manufacturing process.

28. By letter dated July 8, 2008, Ocean Spray's Vice-President and General Counsel, Richard Stamm, attempted to "clarify" the "confusion" caused by Mr. Papadellis's June 17th letter. Mr. Stamm confirmed that Ocean Spray was not putting a value on its purported patent infringement claim that would constitute an adjustment against its cash offer to buy the Decas companies. Mr. Stamm went on to say:

> However, absent the successful completion of these transactions with Ocean Spray, we certainly reserve our rights to fully protect our intellectual property interests.

29. On July 11, 2008, Decas's counsel wrote to Ocean Spray's counsel, disputing the alleged patent infringement and asserting that Ocean Spray's allegation was groundless, and nothing more than a tactic by Ocean Spray to chill third party bids on the Decas companies.

30. On July 15, 2008, Ocean Spray's counsel replied that Ocean Spray had good cause to "suspect" patent infringement, without providing any details as to the way or ways in which Ocean Spray believed the patent was being infringed  Ocean Spray's counsel went on to state that, as a condition for Ocean Spray's agreement not to press its patent infringement claim, Decas would have to "allow Ocean Spray and its representatives to examine Decas' manufacturing process, to procure and test samples from various points in the process, and to examine documents and other historical records concerning the process.

31. Decas declined to allow Ocean Spray, its largest competitor, to examine its plant and its proprietary manufacturing processes.

32. Instead, Decas repeatedly invited Ocean Spray in writing to articulate any colorable basis under which Decas's patented process for making its SDC product could infringe any of the claims of the '861 Patent. Ocean Spray declined to do so, maintaining that it is Decas's burden to prove that it is not infringing the Ocean Spray patent.

33. At the time Ocean Spray made its groundless patent infringement claim, Ocean Spray knew that Decas would have to disclose the claim, even though objectively baseless, to all third parties potentially interested in acquiring the Decas companies.

34. When Ocean Spray refused to withdraw its groundless claim of patent infringement, Decas did disclose to those bidders who were still under consideration the fact that a patent infringement claim had been made.

35. As a result of Ocean Spray having made a groundless patent infringement claim against Decas, Decas was unable to conclude an acquisition of the Decas companies on terms acceptable to Decas.

36. In response to Ocean Spray's repeated refusals to identify the bases of its patent infringement claim, Decas, through counsel, repeatedly accused Ocean Spray of having asserted a baseless patent infringement in its acquisition proposal for the purpose of interfering in Decas's negotiations with other potential bidders.

37. On October 14, 2008, Ocean Spray filed its Complaint in this matter, alleging "upon information and belief" that Decas had infringed at least claim 29 of the '861 Patent.

38. As set forth above, Claim 29 of the '861 Patent requires formulation of an infusion liquid having inherent soluble fruit component *at a level equal to or greater than* the decharacterized fruit, and that the infusion process take place *without net extraction* of inherent soluble fruit component from the decharacterized fruit.

39. Prior to Ocean Spray's filing of the Complaint in this matter, by means of communications between Decas and Ocean Spray and between Decas's patent counsel and Ocean Spray's counsel, Decas advised Ocean Spray that its claim for patent infringement was without merit, because Decas was manufacturing its SDC product in accordance with its own patent, by formulating an infusion liquid with inherent soluble fruit component *at a level less than* the decharacterized fruit, and by using an infusion process that took place *with net extraction* of inherent soluble fruit component from the decharacterized fruit. Thus, prior to its filing of the Complaint in this matter, Ocean Spray not only provided Decas with no colorable basis to substantiate the lawsuit, but it also had reason to know that Decas's manufacturing process did not infringe on the '861 Patent.

40. Immediately after filing the Complaint, Ocean Spray promptly offered, in an October 14, 2008 letter to Decas's counsel, to dismiss the complaint if Decas agreed to Ocean Spray's prior demands to be allowed to inspect Decas's proprietary manufacturing processes and data.

41. Decas declined to accede to Ocean Spray's demand for access to Decas's proprietary manufacturing process. However, prior to Ocean Spray's service of its Complaint, Decas provided Ocean Spray with comprehensive data from actual production runs of its SDC product, confirming that Decas's infusion liquid contains inherent soluble fruit component at a level less than the decharacterized fruit, and that Decas's infusion process takes place with net extraction of inherent soluble fruit component from the decharacterized fruit. Despite its acknowledged receipt and review of this data, which provided objective evidence that Decas was not infringing on the '861 Patent, Ocean Spray chose to serve its Complaint on Decas and to press ahead with this litigation.

42. Ocean Spray also chose to issue a press release to its cranberry growers, stating that it "reluctantly" had filed an action for patent infringement against Decas based on its "suspicions" that Decas "may be violating [its] '861 patent."

43. At the time Ocean Spray filed its lawsuit and issued its press release, Ocean Spray knew that Decas was attempting to negotiate new contracts with various cranberry growers. Ocean Spray also knew that the cranberry growers with which Decas was negotiating would be less likely to contract with Decas if there was a concern about Decas's ongoing ability to manufacture its SDC product and relatedly, Decas's need for raw cranberries. At least one cranberry grower with whom Decas was in negotiations at the time Ocean Spray issued its press release broke off the negotiations because the grower had heard about the lawsuit.

44. Ocean Spray and Mr. Papadellis, in asserting a groundless claim of infringement in Ocean Spray's bid proposal, intended to interfere with the sale of the Decas companies, either so that Ocean Spray could acquire the Decas companies for a bargain price, or so that Ocean Spray could maintain its dominant position in the marketplace by preventing Decas from combining its operations with those of another Ocean Spray competitor.

45. Ocean Spray, in filing a lawsuit against Decas without probable cause to believe that the suit would succeed, and in disseminating its press release advising growers of its objectively baseless patent infringement claim, intended to interfere with Decas's existing and prospective business relationships with cranberry growers and to establish a monopoly in the market for raw cranberries and in the market for SDC products.

46. Ocean Spray's patent infringement allegations against Decas are objectively baseless, with no reasonable chance of success on the merits, and were filed in bad faith and with improper motive.

12

## COUNT I

**(Declaratory Judgment of Non-Infringement)**

47. Decas incorporates by reference paragraphs 1-46 of its counterclaim, and the paragraphs of its Answer and Affirmative Defenses above.

48. As a result of the allegations of patent infringement filed against Decas, an actual controversy exists as to infringement of the '861 Patent.

49. Decas has neither directly infringed nor contributed to or induced infringement of any claim of the '861 Patent, either literally or under the doctrine of equivalents.

50. This counterclaim is exceptional under 35 U.S.C. § 285.

51. Decas is entitled to a declaratory judgment that the '861 patent is not infringed by Decas or its manufacturing process.

52. Decas is also entitled to an award of its attorneys' fees and costs, and all further relief that this Court deems appropriate and just.

## COUNT II

**(Declaratory Judgment of Invalidity)**

53. Decas incorporates by reference paragraphs 1-52 of its counterclaim, and the paragraphs of its Answer and Affirmative Defenses above.

54. As a result of the allegations of patent infringement filed against Decas, an actual controversy exists as to invalidity of the '861 Patent.

55. The '861 patent is invalid and/or void under at least 35 U.S.C. §§ 102 and 103.

56. This counterclaim is exceptional under 35 U.S.C. § 285.

57. Decas is entitled to a declaratory judgment that the '861 patent is invalid.

58. Decas is also entitled to an award of its attorneys' fees and costs, and all further relief that this Court deems appropriate and just.

## COUNT III

**(Intentional Interference With Prospective Business Relations)**

59. Decas incorporates by reference paragraphs 1-58 of its counterclaim, and the paragraphs of its Answer and Affirmative Defenses above.

60. In late 2007 and 2008, Decas had a number of prospective business relationships with entities interested in acquiring the Decas companies, as set forth above.

61. On information and belief, at all relevant times, Ocean Spray and Mr. Papadellis knew that Decas was engaged in negotiations with third parties regarding a potential acquisition of the Decas companies, and asserted an objectively baseless patent infringement claim for the purpose of interfering in those negotiations to Decas's detriment and for Ocean Spray's own business advantage.

62. Ocean Spray's and Mr. Papadellis's interference with Decas's prospective business relations was thus improper in motive and means.

63. Ocean Spray's and Mr. Papadellis's conduct actually interfered in Decas's existing and prospective business relationships with parties interested in acquiring the Decas companies.

64. As a direct and proximate result of Ocean Spray's and Mr. Papadellis's interference with Decas's prospective business relations, Decas has suffered monetary damages in an amount yet to be determined.

## COUNT IV

**(Unfair and Deceptive Business Practices in Violation of Mass. Gen. Laws ch. 93A)**

65. Decas incorporates by reference paragraphs 1-64 of its counterclaim, and the paragraphs of its Answer and Affirmative Defenses above.

66. Ocean Spray and Mr. Papadellis are engaged in trade or commerce within the meaning of Mass. Gen. L. ch. 93A.

67. Decas is engaged in trade or commerce within the meaning of Mass. Gen. L. ch. 93A.

68. Ocean Spray's and Mr. Papadellis's conduct, as set forth above, constituted unfair or deceptive acts or practices.

69. Ocean Spray's and Mr. Papadellis's conduct, as set forth above, was knowing and willful.

70. Decas has been damaged in an amount to be determined at trial by Ocean Spray's and Mr. Papadellis's unfair and deceptive business practices.

## COUNT V

**(Abuse of Process)**

71. Decas incorporates by reference paragraphs 1-70 of its counterclaim, and the paragraphs of its Answer and Affirmative Defenses above.

72. Ocean Spray filed and is maintaining this lawsuit for the illegitimate purpose of interfering in Decas's attempts to negotiate favorable contracts with cranberry growers, and for the further illegitimate purpose of driving Decas out of the markets for cranberries and SDC product.

73. Ocean Spray had no legitimate purpose for the filing of this lawsuit.

74. Ocean Spray filed and is maintaining this lawsuit without probable cause to believe that the suit will succeed, for the ulterior purposes of damaging Decas's existing and prospective relationships with cranberry growers and driving Decas out of the markets for cranberries and SDC product, rather than for the purpose of adjudicating its claims.

75. Ocean Spray's use of the legal process for the illegitimate purposes described above caused and is causing harm to Decas in an amount to be determined.

## COUNT VI

**(Attempt to Monopolize in Violation of the Sherman Act, 15 U.S.C. § 2)**

76. Decas incorporates by reference paragraphs 1-75 of its counterclaim, and the paragraphs of its Answer and Affirmative Defenses above.

77. The cranberry market is comprised of fresh cranberries grown in bogs in the United States and Canada. There are no products other than fresh cranberries that can be used to make cranberry juice or cranberry products such as sweetened dried cranberries. Ocean Spray controls approximately 65% of the North American cranberry market through contracts with cranberry growers in its cooperative. Through contracts with independent growers, Decas controls approximately 7.5% of the cranberries harvested in each season. Aside from Ocean Spray, no other company or entity controls more than 10 % of the cranberry market.

78. The SDC market is comprised of all sweetened dried cranberries produced in the United States and Canada. Sweetened dried cranberries are not interchangeable with other dried fruit products, because cranberries have particular characteristics such as taste, color, and antioxidant properties that are not shared with other dried fruits. Ocean Spray has an approximate 60% share of the SDC market. Decas has an approximate 12% share of the SDC market. Aside from Ocean Spray, no other company or entity has a share of the SDC market

greater than 12%. Other than Ocean Spray and Decas, there are only five or six companies manufacturing SDC products in the United States and Canada. Moreover, on information and belief, a number of these companies are manufacturing SDC product to be sold under Ocean Spray's label or paying a royalty or licensing fee to Ocean Spray, as a result of settlements reached with Ocean Spray following litigation or threats of litigation.

79.     As set forth above, Ocean Spray's patent infringement claims against Decas are objectively baseless, with no reasonable chance of success on the merits, and were filed in an anticompetitive attempt to drive Decas out of the SDC market and out of the cranberry market, with the intention of establishing monopoly power in both the SDC market and in the market for fresh cranberries. Ocean Spray's claims therefore constitute "sham litigation," actionable pursuant to § 2 of the Sherman Act.

80.     If Ocean Spray succeeds in driving Decas out of the SDC market and out of the market for fresh cranberries, there is a dangerous probability that Ocean Spray will succeed in monopolizing both markets. As set forth above, Ocean Spray already controls approximately 65% of the fresh cranberry market and 60% of the SDC market, and no other entity or company has more than a 12% share of either market. Further, there are significant barriers to entry to either market, as most of the available cranberries in the North American market are grown pursuant to multi-year contracts, so that there are few cranberries available for purchase on the open market, and cost-effective production of SDC products requires access to large amounts of raw cranberries. Thus, if Ocean Spray succeeds in driving Decas out of the relevant markets, Ocean Spray will have less competition in setting the prices it pays for fresh cranberries, and less competition in setting the prices at which it sells its SDC products.

17

81. As a direct and proximate result of the foregoing, competition in the relevant markets has been and will continue to be injured to the detriment of consumers who will be subject to fewer choices and likely higher prices.

82. Ocean Spray's attempted monopolization of the North American cranberry market and the SDC market by the filing of this baseless lawsuit also has caused and is continuing to cause harm to Decas in an amount to be determined.

## PRAYER FOR RELIEF

Wherefore, Decas respectfully requests judgment in its favor and against Ocean Spray and Randy Papadellis as follows:

1. Dismissal of Ocean Spray's complaint with prejudice and denial of each and every prayer for relief contained therein;

2. A judgment declaring that Decas has neither infringed, literally or under the doctrine of equivalents, nor actively induced nor contributed to any infringement of any valid claim of the '861 Patent;

3. A judgment declaring that the '861 Patent is invalid;

4. A judgment declaring that the '861 Patent is unenforceable;

5. A judgment that this is an exceptional case, pursuant to 35 U.S.C. § 285, and awarding Decas reasonable attorneys' fees;

6. A judgment declaring Ocean Spray's and Mr. Papadellis's conduct as alleged herein is unlawful;

7. A judgment awarding Decas the damages it has sustained as a result of the illegal conduct of Randy Papadellis, in an amount to be proven at

    trial, to be trebled by law, plus interest (including pre-judgment interest), attorneys' fees and costs of suit;

8.  A judgment awarding Decas the damages it has sustained as a result of the illegal conduct of Ocean Spray, in an amount to be proven at trial, to be trebled by law, plus interest (including pre-judgment interest), attorneys' fees and costs of suit;

9.  A judgment awarding Decas all costs, interest (including pre-judgment interest and post-judgment interest), and other amounts to which it is legally entitled; and

10.  A judgment granting to Decas such further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Decas hereby demands a trial by jury on all issues triable of right by jury.

Dated:  August 4, 2009	Respectfully submitted,
	Decas Cranberry Products, Inc.,
	*By its attorneys*,


	/s/ Joel R. Leeman_____
	Joel R. Leeman (BBO# 292070)
	Jack C. Schecter (BBO#  652349)
	Kimberly J. Seluga (BBO# 667655)
	BROMBERG SUNSTEIN LLP
	125 Summer Street
	Boston, Massachusetts 02110
	Telephone: (617) 443-9292
	Facsimile: (617) 443-0004
	jleeman@bromsun.com


	/s/ Erin K. Higgins_____
	James F. Kavanaugh, Jr. (BBO# 262360)
	Erin K. Higgins (BBO# 559510)
	Conn, Kavanaugh, Rosenthal,
	  Peisch & Ford, LLP
	Ten Post Office Square
	Boston, MA  02109
	Telephone: (617) 482-8200
	Facsimile: (617) 482-6444
	jkavanaugh@ckrpf.com


Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on the 4th day of August, 2009.

/s/ Erin K. Higgins

362978.1