**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| OCEAN SPRAY CRANBERRIES, INC.,<br><br>        Plaintiff,<br><br>  v.<br><br>DECAS CRANBERRY PRODUCTS, INC.,<br><br>       Defendant. | Civil Action No. 08-CV-11738 (RWZ) |
| DECAS CRANBERRY PRODUCTS, Inc.,<br><br>         Counterclaim-Plaintiff,<br><br>  v.<br><br>OCEAN SPRAY CRANBERRIES, INC. and<br>RANDY C. PAPADELLIS,<br><br>         Counterclaim-Defendants. | |

---

## OCEAN SPRAY'S OPENING CLAIM CONSTRUCTION BRIEF

Pursuant to the Court's Scheduling Order (Doc. No. 55), as modified on August 20, 2010, Plaintiff Ocean Spray Cranberries, Inc. ("Ocean Spray") hereby submits its opening brief on claim construction.

The parties have narrowed their claim construction dispute to two specific issues:  (1) the proper measurement for "level" in the formulation step; and (2) the meaning of "without net extraction" in the infusion step.  In this brief, we present some background on the patent-in-suit, identify the areas of agreement and disagreement on claim scope, and then brief the specific issues in dispute.

Claim_Construction_Brief.DOC

# I.     THE PATENT-IN-SUIT

The patent-in-suit, U.S. Patent No. 5,320,861 ("the '861 patent") (Ex. A), concerns a method of processing fruit, such as cranberries.  The patented method allows for production of two separate product streams simultaneously—cranberry juice concentrate and sweetened-dried cranberries—without generating waste syrup.

Sweetened-dried cranberries ("SDCs") are cranberry pieces which have been sweetened to make them more palatable, and then dried.  Ocean Spray sells SDCs in grocery stores and other locations under the trade name Craisins®.  The defendant, Decas Cranberry Products, Inc. ("Decas"), is a competitor of Ocean Spray and also sells SDCs.

To manufacture SDCs, some of the inherent soluble components in cranberries, such as acid, must be extracted, and a sweetener, such as sugar, must be infused.  In certain prior art, extraction and infusion were performed in the same step by soaking raw cranberry pieces in a sugary syrup.  In this prior art single-step process, sugar would migrate into the fruit while acid would simultaneously leach from the fruit into the syrup.  Over time, acid would accumulate in the infusion syrup, and the syrup would have to be partially or entirely replaced.  ('861 patent, col. 1, line 51 to col. 2, line 7; col. 3, lines 5-13.)

The '861 patent teaches a method in which extraction and infusion are performed in two separate steps.  First, raw cranberry pieces are sliced, then soaked in an extraction liquid, typically water, until at least 50% of the inherent soluble fruit component has leached out.  The extract is collected and concentrated to make cranberry juice products.  The leached fruit, or "decharacterized fruit," is then soaked in an infusion liquid.  (*Id.*, col. 2, lines 8-28.)

The infusion liquid is formulated with a level of inherent soluble fruit component (which includes acids) that is equal to or greater than the decharacterized fruit.  As a result, "there is no net extraction of the inherent component into the infusion media in the infusion step."  (*Id.*, col.

- 2 -

2, lines 28-32.)  Since acid does not migrate from the fruit into the infusion syrup, acid does not

accumulate in the infusion syrup, and there is no need to bleed off spent syrup as a waste

product.  (*Id.*, col. 2, lines 18-28.)

There are two substantial advantages to the '861 patent's method.  First, it creates two

separate product streams:  the SDCs and the juice extract from the extraction step.  By contrast,

in the single-step prior art process, cranberry juice is not collected in a separate extraction step.

Second, because acid does not collect in the infusion syrup during the infusion step, the

syrup can be entirely recycled.  After infusion, excess water is evaporated away from the syrup,

sugar is added to replace the sugar infused into the fruit, and the syrup can be used again for

infusing the next batch of fruit.  This is considerably more efficient than methods where syrup

must be disposed of as a waste product.  As explained in the patent:

> The invention is therefore of a particular economic advantage since the inherent
> fruit component which needs to be removed from the fruit (in order to control the
> formulation of the infused product) is removed up front, prior to infusion, as a
> high value high quality fruit juice. Process costs are also significantly reduced by
> the more efficient handling of spent infusion syrup. Further, this feature is of
> particular importance for infusion of high-acid fruits, such as cranberries, which
> require low controlled amounts of inherent soluble fruit component to enhance
> sweetness and make the infused fruit product more palatable but still reminiscent
> of cranberry flavor.

(*Id.*, col. 3, lines 14-26.)

The only independent claim at issue in this case, claim 29, recites as follows:

> 29.  A method for processing fruit, comprising:
> providing raw fruit,
> penetrating said fruit to expose the inside of said fruit, unprotected by the skin,
> extracting said fruit with an extraction liquid to provide decharacterized fruit
>     having a desired level of inherent soluble fruit component,
> collecting the extract from said fruit,
> collecting the decharacterized fruit,
> formulating an infusion liquid having inherent soluble fruit component at a **level**
>     equal to or greater than said decharacterized fruit,

> infusing said decharacterized fruit with said infusion liquid **without net extraction** of said inherent soluble fruit component from said decharacterized fruit,
> collecting a spent infusion liquid after said infusing,
> concentrating said spent liquid,
> recycling said concentrated spent infusion liquid for subsequent infusion, and
> collecting said infused fruit.[1]

The two claim construction disputes focus on the formulating and infusing steps. Specifically, the parties dispute the proper measure for "level," and dispute the meaning of "without net extraction."

## II.    LEGAL STANDARDS FOR CLAIM CONSTRUCTION

The Federal Circuit's *en banc* opinion in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) spells out the materials that district courts should consider in construing claims and their relative importance. According to *Phillips*, courts should first examine the words of the claim from the perspective of one of ordinary skill in the art. *Id.* at 1312-13. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314 (citation omitted).

The Court should next review the intrinsic evidence, including the specification, the file history (if in evidence), and the prior art cited in the file history. *Id.* at 1313-17. Of these sources, the specification is the most important. *Id.* at 1315 (the specification "is the single best guide to the meaning of a disputed term," citing *Vitronics Corp. v. Conceptronics, Inc.*, 90 F.3d

---

[1] The '861 patent also discloses and claims embodiments in which the extraction and infusion steps are performed using a countercurrent apparatus. Those embodiments and claims are not at issue in this case.

1576, 1582 (Fed. Cir. 1996)).  Where the specification gives a "special definition" to a claim

term, that special definition controls.  *Phillips*, 415 F.3d at 1316.

      In addition to intrinsic evidence, the court may also "rely on extrinsic evidence, which

consists of all evidence external to the patent and prosecution history, including expert and

inventor testimony, dictionaries, and learned treatises." *Id.* at 1317 (citations and internal

quotations omitted).  Extrinsic evidence, however, is "less significant than the intrinsic record in

determining the legally operative meaning of claim language." *Id.* (citations and internal

quotations omitted).

## III.    CLAIM CONSTRUCTIONS

      The parties jointly request that the Court construe five claim terms.  For three of these

terms, the parties have agreed upon a proposed construction.  For the remaining two—"level" in

the formulating step and "without net extraction" in the infusing step—the parties present

opposing constructions.

## A.    Agreed Claim Constructions

      As detailed in the stipulation attached as Ex. B, the parties have agreed upon the

following constructions for "decharacterized fruit," "inherent soluble fruit component," and

"collecting":

| Claim Term | Agreed Construction |
| --- | --- |
| "decharacterized fruit" | whole fruit or fruit pieces that have been subject to extraction such that at least 50% of soluble solids have been removed |
| "inherent soluble fruit component" | the composition of materials that contribute to characteristic fruit flavor, including soluble solids such as combinations of sugars and other components, present in the fruit at natural relative levels |

| "collecting" | gathering from one place for use in another place |
|---|---|

The definitions for "decharacterized fruit" and "inherent soluble fruit component" are taken verbatim from the specification.  (*See* '861 patent, col. 2, lines 27-30; col. 1, lines 57-61.)  The definition for "collecting" was proposed by Decas and accepted by Ocean Spray.

**B.      "Level" in the Formulating Step Is Measured in Weight/Volume**

For the formulating step, the parties agree that the construction should take the following form:

| Claim Term | Construction |
|---|---|
| "formulating an infusion liquid having inherent soluble fruit component at a level equal to or greater than said decharacterized fruit" | Formulating an infusion liquid such that the concentration of inherent soluble fruit component in the infusion liquid is equal to or greater than the concentration of inherent soluble fruit component in the decharacterized fruit.<br><br>Concentration is measured _____ |

(Ex. B, p. 2.)  Thus, the parties agree that "level" indicates a measure of concentration.  The parties disagree, however, as to whether "level" indicates concentration measured in weight/volume or weight/weight.

The difference between weight/volume and weight/weight is demonstrated by the graphic below:



Here, we show a one gallon beaker filled with infusion syrup. The yellow circles in the beaker represents inherent soluble fruit component ("ISFC"), while the blue squares represent sugar.[2]

The concentration of ISFC in the beaker, measured as weight/volume, would be the weight of ISFC molecules in the beaker (the weight of the "yellow circles") divided by the volume of the beaker (one gallon). Weight/volume measures, essentially, the *density* of the ISFC molecules within the syrup.

A weight/weight concentration, however, would be the weight of the ISFC molecules divided by the *total weight* of the entire syrup. In other words, weight/weight measures the *relative proportion* of the syrup which is ISFC. It does not indicate density or distribution of the ISFC molecules within the syrup.

As demonstrated below, both basic science principles and the specification make clear that the proper concentration measure for "level" is weight/volume.

---

[2] In reality, both the ISFC and sugar would be large numbers of molecules dissolved and distributed throughout the beaker of syrup—the "dots" and "squares" are representative only, to depict concentrations.

1.    <u>Diffusion Science</u>

The specification explains that the syrup should be formulated with a "level" of ISFC equal to or

greater than the decharacterized fruit so that there is no net extraction of ISFC into the syrup

during the infusion step:

> Preferably, there is no net extraction of the inherent component into the infusion media in the infusion step, i.e., the infusion syrup is formulated such that the level of inherent fruit component is equal to or greater than that in the decharacterized fruit.  ('861 patent, col. 2, lines 28-32)
>
> *        *        *
>
> As discussed above, the infusion liquid can be formulated to include a desired amount of natural or inherent soluble fruit component, equal to or greater than the amount present in the decharacterized fruit so that no net extraction of inherent soluble fruit component into the infusion media occurs during infusion.  (*Id.*, col. 9, lines 50-56.)

Thus, the infusion syrup is formulated to prevent diffusion of ISFC (which includes acid) from

the berries into the syrup during the infusion step.

Earlier in this case, Decas's expert, Dr. Eric Wilhelm, submitted a declaration in which

he explained diffusion science as follows:

> 9. However, according to basic principles of chemistry, the instantaneous and localized velocity (both direction and intensity) of acid migration during the infusion process will be dictated by the concentration of acid in the infusion liquid relative to the concentration of acid in the decharacterized fruit.
>
> 10. This principle is widely referenced in the scientific literature as Fick's law which states that the velocity of mass transfer due to diffusion is equal to the product of the cross sectional area, the diffusion coefficient and the concentration gradient. *See, e.g..,* R. Paul Sing & Dennis R. Heldman, Introduction to Food Engineering (Food Science and Technology, International Series), pp. 596-599 (3rd ed., Academic Press 2008). What this means is any time that the concentration of acid in the infusion liquid is greater than the concentration of acid in the decharacterized fruit, there will be no net migration of acid from the decharacterized fruit into the infusion liquid.
>
> 11. Conversely, when the concentration of acid in the infusion liquid is lower than the concentration of acid in the decharacterized fruit, acid will flow from the fruit into the infusion liquid.

(Doc. No. 50, ¶¶ 9-11.)  Dr. Wilhelm's declaration makes clear that the relevant "concentration" measurement for the formulation step is the one which establishes which direction the ISFC (e.g., acid) will migrate, under Fick's law.  The treatise that Dr. Wilhelm cites in ¶ 10, Introduction to Food Engineering,[3] states clearly that the relevant concentration measure is mass per unit volume:

> The diffusion process can be described mathematically using Fick's law of diffusion, which states that the mass flux per unit area of a component is proportional to its concentration gradient.  Thus, for a component B,

$$\frac{\dot{m}_{\text{B}}}{A} = -D \, \frac{\partial c}{\partial x}$$

> Where $m_{\text{B}}$ is mass flux of component B (kg/s); **$c$ is the concentration of component B, mass per unit volume (kg/m$^3$)**; $D$ is the mass diffusivity (m$^2$/s); and $A$ is area (m$^2$).

(Ex. C, pp. 596-97, emphasis added.)  Thus, concentration, for determining a diffusion gradient, is measured in mass per unit volume, or weight/volume.  It is *not* measured in weight/weight.

That weight/volume is the correct concentration measure can also be demonstrated graphically.  Consider the following two equal-sized beakers:

---

[3] A true and accurate copy of pp. 595-603 from Introduction to Food Engineering are attached hereto as Ex. C.



The beaker on the left is filled with syrup, the beaker on the right is filled with decharacterized fruit. The yellow circles represent ISFC, while the blue squares represent dissolved sugar.

Here, the concentration of ISFC, measured as weight/volume, is equal in the two beakers. (They have the same number of yellow dots, spread over the same volume.) Thus, under Fick's law, when the contents of these two beakers are mixed, there will be no migration of ISFC between the fruit and the syrup. The fruit will emerge from the infusion step with the same concentration of ISFC, measured as weight/volume. Thus, under Ocean Spray's interpretation of "level," the formulation step would be satisfied.

But what if "level" is measured as weight/weight? In that case, the concentration of ISFC in the syrup would be *lower* than in the fruit, because the sugar molecules (the blue squares) are relatively heavy. The same amount of ISFC is in the two identical beakers, but the relative proportion of ISFC (weight/weight) is less in the syrup than in the fruit. Under Decas's view of "level," the formulation step would therefore *not* be literally satisfied. Literal infringement would be avoided because sugar happens to be heavier than, e.g., water. Under Decas' view of "level," literal infringement could always be avoided by dissolving heavy materials into the syrup, even though these additional materials would have *no effect* on the diffusion of ISFC

between the fruit and the berries.  This is contrary to the basic science principles cited by Decas'

own expert, Dr. Wilhelm, in his declaration.

      2.      <u>The Specification Supports Measuring "Level" as Weight/Volume</u>

In correspondence between the parties over the past week, Decas indicated that it believes

the specification, at columns 2 and 3, supports a definition of "level" as measured in

weight/weight.  We disagree.

At columns 2 and 3, the patent describes an example in which both the decharacterized

fruit and the syrup have a ISFC level of 1% "by weight."  Decas, it appears, interprets "by

weight" as necessarily meaning weight/weight.  The specification, however, does not say

"weight/weight," it says only "by weight."  Both Ocean Spray's and Decas' interpretations of

level include weight of ISFC in the numerator—they differ only in whether that weight is

divided by total weight or by volume.

Critically, in describing this example, the specification states:

> For example, raw fruit is extracted such that post extraction the decharacterized
> fruit contains a small amount, e.g., 1% by weight, of inherent soluble fruit
> component and a large amount of extraction fluid, typically pure water.  The
> infusion syrup is formulated such that the level of inherent soluble fruit
> component in the infusion syrup is approximately 1% by weight; equal in
> concentration to the level of decharacterized fruit.  **During infusion, no net
> infusion or extraction of inherent soluble fruit component occurs.**

('861 patent, col. 2, lines 38-47, emphasis added.)  The last sentence is key.  It indicates that

because the "level" of ISFC is equal in the fruit and the syrup, no net infusion or extraction of

ISFC occurs.  As discussed above, under Fick's law, it is the weight/volume concentration

gradient which determines whether diffusion occurs, not weight/weight.  Thus, in the column 2

example, the equal "levels" of 1% by weight must be referring to equal levels, measured as

weight/volume.

In any event, even if the specification did use weight/weight measurements in an example, it would not trump the clear instructions in the specification that the syrup should be formulated with a level of ISFC equal to or greater than the fruit, *such that no ISFC migrates from the fruit into the syrup during infusion*.  As Decas' own expert's declaration makes clear, migration implicates Fick's law, which measures concentration as weight/volume, not weight/weight.

**B.    "Without Net Extraction" Means the Amount of ISFC in the Fruit Increases or Remains the Same**

The second claim construction dispute concerns the term "without net extraction" in the infusion step.  The parties respective proposed constructions are as follows:

| Claim Term | Ocean Spray's Proposed Construction |
|---|---|
| "*without net extraction* of said inherent soluble fruit component from said decharacterized fruit" | the amount of inherent soluble fruit component in the fruit increases or remains the same |

| Claim Term | Decas's Proposed Construction |
|---|---|
| "*without net extraction* of…from…" | the result of a process such that, after all factors and interactions are taken into account, the concentration of a substance at a site is not measurably reduced |

(Ex. B, p. 3.)  The "without net extraction" requirement, we believe, is fairly straightforward.  As the specification makes clear, one purpose of the invention is to avoid accumulating ISFC in the infusion syrup, so that the syrup can be entirely recycled.  ('861 patent, col. 2, lines 18-32.)  The claim therefore requires that, during the infusion step, when the decharacterized fruit and syrup are mixed, there be no "net extraction" of ISFC from the fruit into the syrup.  Thus, the amount

of ISFC in the fruit either increases or remains the same during the infusion step.  Conversely, the amount of ISFC in the syrup either decreases or remains the same during the infusion step, allowing it to be entirely recycled.

While the meaning of Decas' proposed language is not entirely clear, it at least suffers from the same flaw as Decas' proposed construction of "level."  By "concentration," Decas likely again means weight/weight.  Thus, Decas' proposed construction requires that the weight/weight concentration of ISFC in the fruit "is not measurably reduced" during the infusion step.  In other words, if the weight/weight concentration of ISFC in the fruit decreases "measurably" during infusion, then there is no literal infringement.

The flaw in this construction can again be demonstrated by the two-beaker graphic:



As before, the beaker on the left is filled with infusion syrup, and the beaker on the right is filled with decharacterized fruit.  The yellow circles represent ISFC, and the blue squares represent sugar.

When the contents of the two beakers are mixed (the infusion step), there will be no migration of ISFC, because their concentrations (measured in weight/volume) are equal.  However, the sugar (the blue squares) *will* migrate from the syrup into the berries.  At the end of the infusion step, the sugar will be divided between the berries and syrup:

- 13 -



Here, there has been no migration of ISFC, so the concentration of ISFC in the berries, measured as weight/volume, has not changed.  However, the concentration of ISFC, measured as weight/weight, *has* changed.  Because sugar molecules are heavier than water, the *overall weight* of the berries has *increased* during the infusion step.  Consequently, the "concentration" of ISFC in the berries, measured as weight/weight, has been reduced, even though there has been no movement of ISFC.  Thus, under Decas' construction of "without net extraction," there would be no literal infringement, simply because (heavier) sugar molecules have moved from the syrup to the berries.  This is contrary to both the language of the claims, as understood by a person of skill in the field, and the specification's clearly stated object of the invention.

## IV.    CONCLUSION

For the above reasons, Ocean Spray requests that the Court construe the formulation and infusion steps as follows:

| Claim Term | Construction |
|---|---|
| "formulating an infusion liquid having inherent soluble fruit component at a level equal to or greater than said decharacterized fruit" | Formulating an infusion liquid such that the concentration of inherent soluble fruit component in the infusion liquid is equal to or greater than the concentration of inherent |

|  | soluble fruit component in the decharacterized fruit.<br><br>Concentration is measured in weight/volume |
|---|---|
| "*without net extraction* of said inherent soluble fruit component from said decharacterized fruit" | the amount of inherent soluble fruit component in the fruit increases or remains the same |


Dated:  August 27, 2010

/s/ *Michael E. Zeliger*_____

Michael E. Zeliger (BBO # 633654)
David A. Simons (BBO # 638740)
K&L GATES, LLP
State Street Financial Center
One Lincoln Street
Boston, MA  02111-2950
(617) 261-3100 Telephone
(617) 261-3175 Facsimile
Michael.Zeliger@klgates.com
David.Simons@klgates.com

Timothy C. Blank (BBO # 548670)
Kevin S. Blume (BBO # 666364)
DECHERT LLP
200 Clarendon Street, 27th Floor
Boston, MA 02116-5021
(617) 728-7100 Telephone
(617) 426-6567 Facsimile
timothy.blank@dechert.com
kevin.blume@dechert.com

George G. Gordon (admitted *pro hac vice*)
Evan W. Davis (admitted *pro hac vice*)
DECHERT LLP
Cira Centre
2929 Arch Street
Philadelphia, PA 19104
(215) 994-4000 Telephone
george.gordon@dechert.com
evan.davis@dechert.com

*Attorneys for plaintiff/counterclaim defendant*
*Ocean Spray Cranberries, Inc. and*
*counterclaim defendant Randy C. Papadellis*

**<u>Certificate of Service</u>**

I hereby certify that on August 27, 2010, a copy of the above document was served by electronic case filing upon counsel of record.


<u>/s/  Michael E. Zeliger</u>

Michael E. Zeliger (BBO # 633654)